

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

GEORGE J. MELLINA, JR., §
ET AL., §
 §
    Plaintiffs, §
 §
VS. § NO. 4:06-CV-449-A
 §
UNITED STATES OF AMERICA, §
 §
    Defendant. §

## MEMORANDUM OPINION
### and
### ORDER

In the instant action plaintiffs, George J. Mellina, Jr. ("Mellina") and Betty M. Mellina, seek a refund from defendant, United States of America, of penalty interest assessed by the Internal Revenue Service ("IRS") under 26 U.S.C. § 6621(c), for the tax year 1986. Each party has filed a motion for summary judgment. For the reasons stated below, the court concludes that defendant's motion should be denied and that plaintiffs' motion should be granted.

### I.

#### Facts

A. <u>Undisputed Facts</u>

In 1986, Mellina invested as a limited partner in two partnerships, Rancho California Partners ("Rancho") and Vista-Ag

("Vista-Ag") Realty Partners, which were part of a group of partnerships generally referred to as AMCOR partnerships.[1] Plaintiffs reported flow-thru losses from Rancho and Vista-Ag totaling $92,105 on their 1986 Form 1040 federal income tax return. After IRS audited all of the AMCOR partnerships and on March 14, 1990, it issued a Notice of Final Partnership Administrative Adjustment ("FPAA") to Rancho and Vista-Ag. Petitions were filed in the Tax Court to dispute the IRS's proposed adjustments.

In December of 1996, while the Tax Court proceedings were pending, IRS solicited settlement offers from plaintiffs regarding partnership items contained in the FPAAs issued to Rancho and Vista-Ag. On September 13, 1997, plaintiffs sent to IRS two offers, one for Rancho and one for Vista-Ag, each containing a letter requesting a consistent settlement and an executed Settlement Agreement for Partnership Adjustments ("Form 870") with attachments. Plaintiffs also included a check in each offer, in the amount of $23,000 for Rancho and $37,000 for Vista-Ag. IRS accepted both of plaintiffs' offers on October 9, 1997.

---

[1] Investors in the AMCOR partnerships included Morris A. Weiner ("Weiner") and M. Scott Kraemer ("Kraemer"), who were among the taxpayers involved in cases resulting in the Fifth Circuit's opinion in <u>Weiner v. United States</u>, 389 F.3d 152 (5th Cir. 2004). Weiner was one of the plaintiffs in <u>Weiner v. United States</u>, 255 F.Supp.2d 324, 655 (S.D. Tex. 2002). Kraemer was one of the plaintiffs in <u>Kraemer v. U.S.</u>, 2002 WL 575791 (S.D. Tex. 2002).

The IRS mailed a notice of Income Tax Examination Changes to plaintiffs and their attorney on July 16, 1998. The notice showed the adjustments that were made to plaintiffs' 1986 income tax liability resulting from their settlement with the IRS and that interest was being assessed pursuant to §6621(c), i.e. tax motivated interest, to the entire tax deficiency. On August 20, 1998, the IRS assessed such interest in the amount of $38,352.89 and an additional $17,236 in taxes. On October 5, 1998, the IRS issued a refund to plaintiffs in the amount of $4,751.43, consisting of the difference between the estimated payments they made to the IRS and the actual amount of tax and interest the IRS subsequently assessed against them.

On November 18, 2002, the IRS abated $5,208.57 of the interest assessed against plaintiffs, and on December 12, 2002, the IRS refunded $13,910.43 to plaintiffs, consisting of the abated interest, a $4,197.01 overpayment that had been applied to their account, and $4,504.85 of overpaid interest.

B. Disputed Facts

The parties disagree whether plaintiffs, through their attorney Thomas E. Redding ("Redding"), filed a Claim for Refund and Request for Abatement (Form 843) with respect to the § 6621(c) interest assessed against them. During the pretrial

conference held October 17, 2007, between the court and counsel, the parties agreed to the court's deciding this disputed fact issue based on the affidavits of Redding and Michael D. Powell ("Powell"), counsel for the government, as well as Powell's oral statement given at the conference.[2] During the telephone conference/hearing held October 25, 2007, the parties agreed to the court acquiring additional evidence regarding the disputed issue of fact through sworn testimony from counsel for plaintiffs. Having considered the affidavits and statements from counsel for each party, the court found by a preponderance of the evidence that plaintiffs mailed the claim for refund Form 843 (found in plaintiffs' appendix in support of their motion for summary judgment at Bates No. 0108) to IRS on December 30, 1999, and that IRS received the claim form on January 4, 2000, as reflected by the return receipt (found in plaintiffs' appendix in support of their motion for summary judgment at Bates No. 0112). Therefore, no disputed issue of fact remains.

---

[2] During the October 17 conference and based on the evidence presented, the court found by a preponderance of the evidence that the plaintiffs had mailed the Form 843 to IRS on December 30, 1999. Following that conference, the court had some concerns regarding the decision it made about whether plaintiffs had in fact mailed the Form 843 to the IRS. Therefore, the court scheduled a telephone conference/hearing for October 25, 2007, to revisit the issue.

II.

Analysis

A. Statutory Background

The Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), 26 U.S.C. §§ 6221-6233, was enacted by Congress "to improve the auditing and adjustments of income tax items attributable to partnerships." Alexander v. United States, 44 F.3d 328, 330 (5th Cir. 1995). Under TEFRA, partnerships are required to file informational returns indicating the amount of income, gains, deductions, and credits attributable to each partner. Weiner v. United States, 389 F.3d 152, 154 (5th Cir. 2004). Individual partners are then obligated to report their pro rata share of tax on their income tax returns. Id. In Weiner, the Fifth Circuit explained TEFRA's treatment of "partnership" and "nonpartnership" items.

> TEFRA requires the treatment of all partnership items to be determined at the partnership level. 26 U.S.C. § 6221. While TEFRA defines a "partnership item" in technical terms, the provision generally encompasses items "more appropriately determined at the partnership level than at the partner level." Id. § 6231(a)(3). All other items are defined as nonpartnership items. Id. § 6231(a)(4).
>
> If the IRS decides to adjust any "partnership items" reflected on the partnerships's return, it must notify the individual partners of the adjustment through a Notice of FPAA. . . .

5

> For ninety days following the issuance of an FPAA, the [partnership's tax matters partner, who binds all partners] has the exclusive right to file a petition for readjustment of the partnership items in Tax Court, the Court of Federal Claims, or a United States District Court. Id. § 6226(a). After expiration of the ninety-day period, other partners are given sixty days to file a petition for readjustment. Id. § 6226(b)(1). If a partner's tax liability might be affected by the outcome of the litigation of partnership items, that partner may participate in the proceeding. Id. § 6224(a), § 6224(c). The IRS may assess additional tax liability against individual partners within one year of the final conclusion of the partnership's tax determination. Id. §6229(d). The partner may contest the tax liability by paying the assessment and filing a refund action in a United States District Court. However, "[n]o action may be brought [in district court] for a refund attributable to partnership items." Id. § 7422(h).

389 F.3d at 154-55 (citation omitted).

B. <u>§ 7422(h) Does not Operate to Deny the Court of Subject Matter Jurisdiction</u>

Title 26 U.S.C. § 7422(h) states that "[n]o action may be brought for a refund attributable to partnership items . . . ." Partnership items are those items which are "more appropriately determined at the partnership level than at the partner level." § 6231(a)(3). Here, plaintiffs entered into a settlement agreement with the IRS with respect to partnership items contained in the FPAAs issued to Rancho and Vista-Ag. The government makes what might be described as a conditional concession that, as a result of the settlement, the partnership

6

items covered by the agreement became nonpartnership items, the condition being that the court conclude that the parties agreed, as a term of the settlement, that § 6621(c) interest would apply to such items. The government contends in the alternative, if the court finds that application of § 6621(c) interest was not included in the agreement, that the character of the partnership items remains unsettled. According to the government, the characterization of the items is, in and of itself, a partnership item and, consequently, this court lacks jurisdiction pursuant to § 7422(h) to review the items.

Plaintiffs argue that the issue of whether the settlement agreement included the application of § 6621(c) interest is separate and apart from the court's jurisdiction to review the refund claim. Plaintiffs contend that both parties intended the settlement agreement to convert all of the partnership items to nonpartnership items and, therefore, that the jurisdictional bar contained in § 7422(h) is not applicable.

The court concludes that both parties did, in fact, intend the settlement agreement to convert all of the partnership items to nonpartnership items. The government maintains that it only concedes this point if the agreement is found to have included the assessment of § 6621(c) interest. That contention is

7

illogical. The assessment or non-assessment of § 6621(c) interest does not determine the characterization of the items. What converts the partnership items to nonpartnership items is the fact that they are part of a settlement agreement and are no longer subject to the outcome of the pending partnership level proceedings. See Weiner, 389 F.3d at 155. The opinion in Weiner is instructive:

> [I]f a partner settles his partnership tax liability with the IRS, the partner will no longer be able to participate in the partnership level litigation, and will be bound instead by the terms of the settlement agreement. Id. § 6228(a)(4), § 6224(c)(1). In addition, partnership items convert to nonpartnership items when the IRS enters into a settlement agreement with the partner with respect to such items. Id. § 6231(b)(1)(C). Thus, if a partner files an action for a refund attributable to partnership items, but those items have been converted through a settlement agreement, the jurisdictional bar of § 7422(h) no longer applies. Alexander v. United States, 44 F.3d 328, 331 (5th Cir. 1995).

Weiner, 389 F.3d at 155. The refund claim in the instant action is analogous to the situation described by the Weiner opinion. Plaintiffs and the IRS intended to settle all partnership items under the settlement agreement. Thus, because those partnership items were converted to nonpartnership items, plaintiffs' claim for a refund with respect to those items is not barred by §

8

7422(h). See id. Accordingly, § 7422(h) does not deny this court of subject matter jurisdiction over the instant action.

C. Subject Matter Jurisdiction is Proper Because Plaintiffs' Refund Claim was Timely

Here, the government argues that the six-month statute of limitations contained in § 6230(c)(1)(A)(ii) applies to plaintiffs' refund claim for § 6621(c) interest. In Field v. United States, 328 F.3d 58 (2nd Cir. 2003), the Second Circuit held that assessment of § 6621(c) interest was a substantive affected item, not a computational adjustment. The court agrees with this analysis. Section 6231(a)(5) defines an "affected item" as "any item to the extent such item is affected by a partnership item." There are two types of affected items. "The first type is a computational adjustment made to record the change in a partner's tax liability resulting from the proper treatment of a partnership item." Field, 328 F.3d at 60 n.3 (internal quotation marks and citation omitted). The second type is a substantive affected item, "an item that is dependent on factual determinations to be made at the individual partner level." Id. Section 6621(c) interest is a substantive affected item because the application of such interest turns on issues that are specific to individual partners. Thus, here,

9

plaintiffs' refund claim for § 6621(c) interest is not subject to the six-month statute of limitations associated with computational adjustments. See McGann v. United States, 76 Fed. Cl. 745 (Fed. Cl. 2007)(stating that taxpayers' claim seeking to recover § 6621(c) interest did not relate to a computational adjustment due to a partnership item, and thus, was not governed by six-month statute of limitations).

During the October 17 pretrial conference held in the instant action, counsel for the government conceded that the government's only arguments concerning the timeliness of plaintiffs' refund claim were: (1) that the refund claim was never filed, and (2) that the § 6230(c)(1)(A)(ii) six-month statute of limitations applied to the claim. Because the court has found, by a preponderance of the evidence, that the refund claim was mailed on December 30, 1999 and received on January 4, 2000, and that the six-month statute of limitations does not apply, the court concludes that the refund claim was timely filed.[3]

---

[3] The court notes that it does not need to decide which statute of limitations applies because the government's only argument was that the claim was untimely if the § 6230(c)(1)(A)(ii) six-month statute of limitations applied.

D. Section 6621(c) Penalty Interest

Title 26 U.S.C. § 6621(c) penalty interest was repealed in 1989, but the IRS can still impose the penalty interest under the statute for any pre-1990 tax years. Section 6621 imposes an interest rate of 120% of the statutory rate to "any substantial underpayment attributable to tax motivated transactions." § 6621(c). An underpayment is "substantial" when it exceeds $1,000 for the tax year in question. Id. A "tax motivated transaction" includes "any sham or fraudulent transaction." Id.

The ultimate issue in the instant action is whether plaintiffs' assent[4], at the time of the settlement, that there would be an assessment of § 6621(c) interest caused plaintiffs to be estopped from bringing a refund claim. The government maintains that plaintiffs' assent was a term of the settlement agreement and that it prevents plaintiffs from seeking a refund. Plaintiffs disagrees, arguing that the settlement agreement in this case is analogous to those in Weiner, that the analysis in that case on the issue of § 6621(c) interest is binding, and that they are entitled to a refund of the interest as a matter of law.

---

[4] Plaintiffs concede that they were aware at the time they made the settlement agreement that IRS planned to assess the penalty interest, but plaintiffs deny that they agreed that such an assessment would be valid.

11

The government maintains that the settlement agreements analyzed in Weiner are not analogous to the agreement in the instant action, and, thus, that Weiner is not binding.

In Weiner, the taxpayer appellants were partners in the AMCOR partnerships and were appealing decisions in multiple district court cases involving their settlement agreements with the IRS concerning tax motivated transactions. The settlement agreements involved in Weiner were identical to those the IRS solicited to plaintiffs with the exception of the specific amounts and transactions.[5] The Fifth Circuit concluded in Weiner that neither the FPAAs nor the settlement agreements established that the taxpayers' underpayments were attributable to tax motivated transactions.[6] "[W]hen the FPAA lists several

---

[5] The government argues that the settlement agreement in the instant action is substantially different from those in Weiner because, unlike appellants in Weiner, plaintiffs concededly received and returned the Summary of the AMCOR Appeals Settlement Offer ("SAASO"), which specifically stated that § 6621(c) interest was being applied. The court disagrees. The fact that plaintiffs acknowledged that § 6621(c) would be applied does not mean that plaintiffs agreed that such interest was owed.

[6] The district courts, in the cases leading up to the Fifth Circuit opinion in Weiner, concluded that regardless of whether the SAASOs were received, they were not part of the settlement agreement and thus were not binding on the taxpayers. Weiner v. United States, 255 F.Supp.2d 324, 655 (S.D. Tex. 2002); Kraemer v. United States, 2202 WL 575791 (S.D. Tex. 2002) at *2-*3, *12. Moreover, the district court in Weiner concluded that even though the taxpayer in that case conceded that he knew the IRS planned to assess § 6621(c) interest to the items contained in the settlement agreement, the concession did not foreclose his opportunity to seek a refund of that interest. 255 F. Supp.2d at 655. This court concludes that the instant action is analogous. Regardless of whether plaintiffs sent in the SAASO, it was not a part of the settlement agreement. Further, the fact that plaintiffs

independent reasons for disallowing the taxpayers' deductions, there is no way to determine, without additional superfluous litigation, whether the taxpayers' underpayment is 'attributable to' a reason that also qualifies as a tax-motivated transaction (such as a sham)." Id. at 162. Consequently, the Fifth Circuit held that because as a matter of law the taxpayers underpayment was not attributable to a tax motivated transaction, IRS could not assess the penalty interest pursuant to § 6621(c) against the taxpayers.

The court concludes that the facts in the instant action are sufficiently analogous to Weiner that the analysis in that case is applicable here. Thus, as a matter of law, plaintiffs' underpayment is not attributable to a tax motivated transaction. Accordingly, the IRS may not assess § 6621(c) interest against plaintiffs. See id. at 163.

---

sent a letter acknowledging that the IRS was assessing § 6621(c) penalty interest, "does not constitute an agreement by [plaintiffs] not to contest the applicability of such interest." Id. Moreover, "[t]he settlement agreement, the Form 870-P(AD) and accompanying schedule of adjustments, as well as [plaintiffs' estimated payment] of all the IRS claimed, are not concessions by [plaintiffs] that [they] agreed to the IRS's claim of entitlement to § 6621(c) interest." Id.

13

VI.

Order

For the reasons discussed above, the court concludes that plaintiffs' motion for summary judgment should be granted and the government's motion for summary judgment should be denied. Therefore,

The court ORDERS that plaintiffs have and recover from the government the amount of $8,662.52, plus interest thereon in accordance with 26 U.S.C. § 6611.[7]

The court further ORDERS that the government's motion for summary judgment be, and is hereby, denied.

SIGNED October 26, 2007.

JOHN McBRYDE
United States District Judge

---

[7] The court notes that plaintiffs, through counsel, have conceded that they are not entitled to an award of attorney's fees or costs of court in the above-captioned action.